42 C.C.P.A.(Patents)

**Elmer J. LAWSON, George M. Fohlen, and Aaron Addelston, Appellants,**

v.

**William F. BRUCE and Joseph Seifter, Appellees.**

Patent Appeal No. 6089.

United States Court of Customs and Patent Appeals.

April 28, 1955.

Dean Laurence, St. Johns, Mich. (James B. Vander Kelen, Washington, D. C., of counsel), for appellants.

Louis H. Baer, Merrick, N. Y., for appellees.

Before GARRETT, Chief Judge, and O'CONNELL, JOHNSON, WORLEY, and COLE, Judges.

COLE, Judge.

Appellants here appeal from a decision of the Board of Patent Interferences of the United States Patent Office, one member dissenting, awarding priority of the inventive subject matter disclosed in two counts composing the interference to the junior party and appellees, Bruce and Seifter.

The invention defined in the counts relates to a group of new organic compounds having valuable therapeutic properties, such as local anesthetic activity. Count 1 is a generic composition claim. Count 2 covers a process for making the product of count 1. The counts read:

"1. A member of the group consisting of a basic amide having the formula

$$B-Y-CO-NH-CH (C_6H_5)_2$$

where B is a di (lower alkyl) amino group attached to Y through its nitrogen atom and wherein the alkyl groups may be joined to form a member of the group consisting of piperidines, morpholines and pyrrolidines and Y is a lower alkylene group, and acid addition salts thereof.

"2. The process of preparing a basic amide having the formula

$$B-Y-CO-NH-CH (C_6H_5)_2$$

where B is a di (lower alkyl) amino group attached to Y through its nitrogen atom and wherein the alkyl groups may be joined to form a member of the group consisting of piperidines, morpholines and pyrrolidines and Y is a lower alkylene group, which comprises treating a compound having the formula

$$halogen-Y-CO-NH-CH (C_6H_5)_2$$

with a secondary amine having the formula BH."

The interference was declared between a patent to appellants, Lawson et al., issued August 29, 1950 (No. 2,520,153), on an application, Serial No. 773,520, filed September 11, 1947; and an application of appellees, Serial No. 204,266, filed January 3, 1951, as a continuation-in-part of an application, Serial No. 673,-155, filed May 29, 1946. Appellees' application in interference was thus filed subsequent to the issuance of appellants' patent, and the counts in controversy were copied by appellees from the patent (claims 2 and 7 therein) for purposes of interference.

Neither party took testimony. Appellants (senior party) relied on the date of the filing of their application (which matured into the patent in interference) for inventive acts. To overcome this filing date, appellees relied on the disclosure of their parent (1946) application as a constructive reduction to practice of the invention defined in the counts.

Somewhat simplified, the issue for determination by the Board of Patent Interferences amounted essentially to this: In Kyrides v. Anderson, 121 F.2d 514, 28 C.C.P.A., Patents, 1336, we held, in effect, that the first party to conceive and reduce to practice, either actually or constructively, a species of a generic count was entitled to the award of priority as to such genus. It being undisputed that appellees herein, in their parent application, disclosed a single compound within the scope of the generic counts, i. e., alpha-morpholino-N-diphenylmethyl acetamide, the rule in Kyrides v. Anderson, supra, would clearly apply if appellees could prove that such disclosure was sufficient to support, within the contemplation of the patent law, a constructive reduction to practice of the named species. Having copied the counts into their interference application from an issued patent, appellees were required to prove their case beyond a reasonable doubt. See Wiley v. Mears, 75 F.2d 510, 22 C.C.P.A., Patents, 986; Bierly v. Happoldt, 201 F.2d 955, 40 C.C.P.A., Patents, 774. Worthy of observation, however, is the fact that since appellees' parent application contained a species within the count, and such application was co-pending with appellants' later filed application, issuance of the patent to the latter without declaring an interference between such co-pending applications may well have been the

result of some oversight on the part of the Patent Office officials.

In awarding priority to appellees, the majority of the board, for reasons discussed in detail, infra, was satisfied that the species composition and process in question were adequately disclosed. The dissenting member, in a written opinion, expressed a contrary viewpoint.

Both parties filed well prepared briefs and participated in the oral argument of the appeal. The chemistry involved is exceedingly complex, requiring the utmost in painstaking study to understand, especially where, as here, we are called upon as a lay group to apply such chemistry in the light of applicable law to determine whether there is requisite basis in a patent application disclosure to teach a trained chemist to make a heretofore unknown organic chemical compound within the terms of the counts in interference. Being fully cognizant of our limitations under these circumstances, we accomplish no commendable result by substituting our judgment for that of the body of experts, whose decision we are urged to reverse, unless it clearly appears to us that such experts have committed error.

It is not disputed that the parent disclosure relied upon by appellees sets forth one lower alkylene group, e. g. methylene. The species within the count, alpha-morpholino-N-diphenylmethyl acetamide, hereinafter referred to as compound 17, appears in the parent application as one of many new substituted glycinamides useful in the field of therapeutics. These compounds were stated in the specification and appellees' brief to have the general formula $R_1R_2NCH_2CONHR_3$ where $R_1R_2N$ could be either a nitrogen-containing heterocyclic radical, contemplating and mentioning piperidine, morpholine, and pyrrolidine, or where $R_1$ and $R_2$ were separate alkyls, and $R_3$ could represent an aralkyl radical (which includes a diphenylmethyl radical.) As set forth in the specification, the following method was to be used in making the contemplated compounds:

"In general, the compounds of the invention may be synthesized by reacting an appropriate chloracetamide corresponding to the formula
$$ClCH_2CONHR_3$$
where $R_3$ represents the radicals indicated above with an appropriate secondary amine corresponding to the formula $R_1R_2NH$, where $R_1R_2N$ represents the radicals as indicated above.

"The amines may be prepared in the usual and known manner. The preferred method for the preparation of the chloracetamide intermediate involves reacting chloracetyl chloride with a primary amine $R_3NH_2$ in the presence of benzene or ether as a solvent for the reactants. Heating may or may not be necessary depending on the speed of the particular reaction. The chloracetamide remains in solution in the solvent and is obtained by distilling off the solvent under reduced pressure. In general, a molar ratio of chloride to amine of about 1:2 is preferred for the reaction.

"The reaction of the appropriate chloracetamide and the appropriate secondary amine to form the desired substituted glycinamide is preferably operated with a molar ratio, amide to amine of about 1:1 and is carried out in the presence of a solvent for the reactants such as higher alcohols having 4 to 7 carbon atoms in the molecule, dioxane or hydrocarbon solvents such as xylene. The reaction is carried out in the presence of an acid acceptor or mildly basic material such as alkali or alkaline earth metal carbonates, sodium bicarbonate or alkali metal alcoholates and preferably about 2 to 3 mols of this material is used. The reaction operation is set up for refluxing and the reaction temperature is the refluxing temperature of the particular solvent selected. Generally a reaction or refluxing time of about 10–15 hours is sufficient for

complete reaction. In the event that solids are formed, these are removed by filtration, the substituted glycinamide product remaining in solution in the solvent. The latter is finally removed by distillation at low pressures to obtain the desired product."

Five specific examples were included in the application for making compounds in accordance with the stated formula and general procedure. Twenty-nine additional compounds were listed, including compound 17, alpha-morpholino-N-diphenylmethyl acetamide, appellees asserting in the specification that all such compounds could be made by procedures analagous to those disclosed in the examples. Common physical and chemical properties of all compounds were disclosed. Utility of the compounds as therapeutics is not disputed.

The counts in interference as stated are directed to a series of poly-arylated compounds. The specific examples appearing in appellees' parent specification, and the entire list of named compounds, with the exception of compound 17, relate to mono-arylated alkyl compounds. Compound 17 is a poly-arylated compound. There is no *specific* working example given for the preparation of compound 17, and no independently identifying properties or quantitative physical constants, other than the naming of the compound, are specifically given with reference thereto. The principal starting intermediate admitted to be necessary to prepare compound 17, i. e., chloro-N-diphenylmethyl acetamide, is likewise undisclosed.

At the time appellees' parent application was filed, there was no requirement in the Rules of the Patent Office, as now in effect, that a specific embodiment of a claimed process and/or composition of matter be included in the specification. Accordingly, the Board of Patent Interferences addressed itself to a determination of whether a specific working example was otherwise required by law, and whether appellees' parent

specification as a whole was sufficient to teach one skilled in the art to prepare compound 17. The majority of the board reviewed a number of decisions rendered by tribunals within the Patent Office, and concluded as follows:

"The Office rulings above discussed definitely establish that a sufficient disclosure need not of necessity contain a specific working example for a particular compound being claimed. A teaching in the specification as a whole for preparing the compound may suffice. As for identifying properties the decisions establish no uniform practice. We find nothing in R.S. 4888 [the statute then applicable] or the Rules of Practice which demands such properties in a disclosure and we are not aware that the question has been decided in the courts.

"It is not believed necessary that the Bruce et al. [appellees'] parent application indicate that the compound was ever made. For that matter even the Examples in the involved Lawson, et al. [appellants'] patent do not prove the named compounds were made since a melting point does not establish the identity of a novel compound. Only an analysis (which is lacking) would establish identification. However, the statutes do not require that a patentee actually reduce the invention to practice. The filing of a complete and allowable application is conclusive evidence that the invention was reduced to practice as early as that date. [citing Automatic Weighing Machine Co. v. Pneumatic Scale Corp. (1 Cir.), 166 F. 288].

"Five specific examples are given in the parent application, all relating to compounds outside the counts. Twenty-nine additional compounds are listed, among them compound 17 herein relied upon. It is stated [in appellees' parent specification] that the listed compounds may be prepared by procedures analogous to

those described in the Examples. In addition there is the general disclosure [hereinbefore quoted from appellees' specification]. It appears, therefore, that although no specific working example is given for compound 17 there is set forth substantial working procedure. For this reason we disagree with the senior party's view that more than the mere naming of the compound has not been accomplished in the parent application.

"The reactants required to produce compound 17 according to the procedures disclosed are obviously morpholine and chloro-N-diphenylmethyl acetamide. The senior party correctly points out that the latter reactant is not mentioned in the parent case but this is not significant, as we view it, because a glance at the naming of compound 17 would clearly spell out to any chemist that this reactant must be used.

"After careful consideration of the parent disclosure we are satisfied that a person skilled in the art, following the general and specific teachings therein, would encounter no difficulty in producing compound 17. * * * it is not denied by the Examiner, or the senior party that compound 17 can actually be produced by following closely the analogous and general procedures disclosed in the parent application. We appreciate that it may involve some judgment on the part of the skilled worker. This, however, is true even in cases where examples are given since obviously every detail of the necessary procedure cannot be given in a patent specification and many details must be left to the skill of the chemist. [citing Farrington v. Mikeska, 33 C.C.P.A., Patents, 1073, 155 F.2d 412, 69 U.S. P.Q. 509].

*    *    *    *    *

"Only if the lack of disclosure of an identifying chemical or physical property would cause a person skilled in the art to resort to experimentation before he could make compound 17 would we feel justified in holding the disclosure incomplete. Perhaps there are instances where identifying properties are needed to enable persons skilled in the art to prepare a compound and thus satisfy R.S. 4888 in respect to a complete disclosure but we do not think such a situation exists here. There is nothing in any of the five Examples in the parent case to indicate that knowledge of a boiling point or other characteristic contributed anything to the production of the compound. We see no reason why compound 17 could not be produced in the same way, unaided by a melting point or a boiling point or other property and there is no evidence before us to indicate otherwise. Moreover, we feel that in this particular case the full and adequate naming of compound 17 * * * is sufficient to satisfy any call for an identifying property, for the reason that the molecular weight of the compound is inherently disclosed when the compound is named. There appears no involvement of isomers and it seems to us, therefore, that the molecular weight is as much an identifying characteristic as a melting point or a boiling point, for once any of these constants are given confirmation by actual test is a routine matter."

In contravention of the foregoing conclusions, appellants argue that the mere naming of compound 17, without disclosing its identifying properties, and without a working example and disclosure of the intermediates from which the compound is to be prepared, does not constitute sufficient basis (beyond a reasonable doubt) for a constructive reduction to practice of the subject matter defined in the issue counts. Appellants urge that the probative character of the proof offered in support of a constructive reduction to practice must be examined by the same stringent cri-

teria as is proof of an actual reduction to practice, except for the latter's requirement of corroboration. In this respect, appellants contend that mere disclosure of compound 17 with the statement that an appropriate secondary amine and an appropriate undisclosed chloroacetamide can be reacted by procedures analogous to those described in examples in the specification, all of which relate to compounds not within the counts, is clearly insufficient. They emphasize that the principal starting material, i. e., chloro-N-diphenylmethyl acetamide, is not disclosed, and that no member of the mono-arylated series of compounds set forth by appellees would serve as such intermediate in preparing compound 17. Each of these arguments finds some support in the views expressed by the dissenting member of the board, particularly so in the contention that there was a lack of disclosure of the proposed reactants necessary to make compound 17. The dissenting member emphasized that while such reactants were the appropriate secondary amine and acetamide, and with respect to compound 17 would be morpholine and diphenylmethyl chloroacetamide, a search through certain chemical literature failed to reveal to him any mention of the required amide reactant.

In R.S. 4888,[1] 35 U.S.C., 1946 ed. § 33, the statute applied by the board in evaluating the legal sufficiency of appellees' parent disclosure, an inventor is required in his application for a patent to disclose the invention in such full, clear, concise, and exact terms as to enable one skilled in the art to make, construct, compound, and use the same. There is no requirement in R.S. § 4888 that a party relying on a constructive reduction to practice to establish priority of invention must show a specific working example to support the compound claimed. For this reason, if compound 17 would be the natural and expected result achieved by one skilled in the art following the procedures outlined by appellees in their parent specification, such disclosure must be regarded as sufficient.

We think, therefore, that the important consideration, recognized but only partially applied by the dissenting member of the board, and seemingly in the final analysis ignored by appellants, is not whether appellees have proved that they have followed their own procedures and actually identified and held compound 17 in their hands. Proof of this character is obviously directed to establishing an actual reduction to practice and appellees do not here rely thereon.

In their brief, appellees have answered, and we believe quite satisfactorily, the question of disclosure of the amide reactant necessary to make compound 17. They state:

"The pertinent chloracetamide which the dissenting member could not find is a known compound and he would have found it had he searched through the chemical patent literature. It is fully disclosed in the patent to Bruce et al., [appellees herein], No. 2,449,638, dated September 21, 1948 [application filed May 29, 1946], column 3, lines 12–30 inclusive. The pertinent disclosure in this patent is reproduced hereinbelow:

"For the preparation of the appropriate chloracetamide intermediate, 20 grams of diphenylmethyl amine in 200 cc. of benzene was added to a solution of 11.3 grams of chloracetyl chloride in 200 cc. of benzene. The solution was refluxed for 3 hours and after cooling diphenylmethyl amine hydrochloride separated and was filtered off. After concentration of the filtrate in vacuo, the product, N-alpha-chloraceto-diphenylmethyl amine solidified and was recrystallized from alcohol. It weighed 18.3 grams and melted at 128–129° C."

Chemical analysis of the above was also set forth. In any event, the majority

---

1. Revised in 35 U.S.C. 1952 ed. § 112.

opinion below has stated that the name of compound 17, in itself, is sufficient for any chemist to understand that this reactant must be used.

It does not appear disputed that the mere naming of compound 17 is adequate to disclose to the trained chemist the formula, molecular weight, and arrangement and inter-relation of the atoms. This is certainly an identifying property. The general method disclosed for making compound 17, and the five examples, though none are specific to compound 17, would seem to constitute abundant working principle, and, in this respect, we note that appellants have not taken issue with the conclusion of the majority below that compound 17 can, in fact, be produced "by following closely the analogous and general precedures disclosed in the parent application." We also note that the disclosure in question states that the compounds of the invention, including compound 17, may be prepared and used in the form of their acid addition salts, citing examples, and general solubility characteristics of the contemplated compounds are given as well as specific reference to the various therapeutic values thereof.

We can find no sound basis in appellants' arguments upon which to conclude that the description given in appellees' parent application is not in compliance with the provisions of R.S. § 4888, supra. On the contrary, we are of the opinion that the decision appealed from is correct, and we adopt the reasoning given therein in its entirety. Accordingly, we hold that appellees are the first party to constructively reduce to practice, beyond a reasonable doubt, a species of the invention involved herein, and a process for making the same, and are entitled to the award of priority as to both counts in interference. Kyrides v. Anderson, supra.

The decision of the majority of the Board of Patent Interferences is affirmed.

Affirmed.