**Application of John A. STEPHENS et al.**

**Patent Appeal No. 75–599.**

United States Court of Customs and Patent Appeals.

Feb. 19, 1976.

---

Charles E. Wills, Los Angeles, Cal. (Wills, Green & Mueth, Los Angeles, Cal.), attorneys of record, for appellants.

Joseph F. Nakamura, Washington, D.C., for the Commissioner of Patents, Jack E. Armore, Washington, D.C., of counsel.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Judges.

MILLER, Judge.

This appeal is from the decision of the Patent and Trademark Office Board of Appeals affirming the examiner's rejection of claims 1 through 8 of application serial No. 97,636, filed December 14, 1970, for "High-Strength, Light-Weight, Fired Clay Body and Method of Producing Same." The sole issue is whether appellants' specification is sufficiently enabling under the first paragraph of 35 U.S.C. § 112. We reverse.

## The Invention

The invention is a process for producing clay bodies such as roof tile, with a high strength-to-weight ratio, from readily available plastic clay and grog, *i. e.*, fired clay or talc, by quick-drying and then quick-firing a preformed clay body so that the exterior or surface layer is fired or oxidized to maturity while the center portion remains relatively unfired. This places the exterior layer under tension and the center portion under compression, strengthening the product relative to conventional tile, which is slowly fired and completely oxidized. Claim 1 is illustrative:

> 1. The method of producing a light-weight high-strength fired clay body which includes the steps of:
>
> forming a compacted unfired body from granular materials which include a major proportion of plastic, low-firing clay and grog; and
>
> heating the clay body sufficiently to cause the outer lay [*sic*] thereof to oxidize to maturity and to shrink, while the center portion of said body remains substantially unoxidized and with a lesser amount of shrinkage, whereby the center portion is subjected to compression by the outer layer.

## The Rejection

Although reversing other rejections by the examiner, the board sustained the rejection under 35 U.S.C. § 112 "only to the extent it is based upon the ground that the specification is not sufficiently enabling," and said:

> It would appear from the specification, as well as from the references, particularly Tatnall, that in order to successfully practice a "quick-firing" process of tile making, the composition employed must be carefully formulated.

Indeed, from Tatnall it would appear that the industry as a whole is very secretive concerning the process parameters as well as the compositions employed. Here, although the specification indicates the various materials that may be employed within wide ranges as to amounts, sizes, etc., it does not give a single embodiment to give guidance to the worker as to how to correlate the necessary amounts with process parameters to achieve the desired results. Under the circumstances here present, at least one embodiment is necessary upon which the art may rely for guidance as to the various selections necessary.

## OPINION

Both the solicitor and appellants cite Rule 71(b), 37 CFR 1.71(b),[1] which implements 35 U.S.C. § 112, first paragraph. The solicitor variously interprets "specific embodiment" required by the rule as "a complete example specifying all necessary details—including the essential materials, particle size where relevant and proportions, as well as the relevant specific parameters or conditions of the process and the essential physical characteristics of the product" and as a "specific example," or what is commonly referred to as a working example. A working example, however, is not always necessary. *In re Long*, 368 F.2d 892, 54 CCPA 835, 151 USPQ 640 (1966). A specification need be no more specific under Rule 71(b) than is required by the enablement provision of 35 U.S.C. § 112. *In re Gay*, 309 F.2d 769, 50 CCPA 725, 135 USPQ 311 (1962). The test is whether there is sufficient working procedure for one skilled in the art to practice the claimed invention without undue experimentation.

1. § 1.71 Detailed description and specification of the invention.

(b) The specification must set forth the precise invention for which a patent is solicited, in such manner as to distinguish it from other inventions and from what is old. It must describe completely a specific embodi-

In addition to the presence or absence of a working example, relevant considerations are the nature of the invention, the state of the prior art, and the relative skill of those in that art. *In re Honn*, 364 F.2d 454, 53 CCPA 1469, 150 USPQ 652 (1966). Noncritical features of the invention may be supported by a more general disclosure than those at the heart of the invention. See *In re Gay, supra*, 309 F.2d at 774, 50 CCPA at 733, 135 USPQ at 316.

Since the sufficiency of the disclosure is in issue, we describe and quote it in detail. After stating in the abstract essentially what is recited in claim 1, the "BACKGROUND OF THE INVENTION" is set forth, including:

As is generally known, the fired clay art is an extremely ancient one, and the production of fired clay roof tile extends back many years.

There follows the disclosure that conventional clay bodies are produced by drying unfired bodies for a least several hours and firing for as long as eight hours. Under the "SUMMARY OF THE INVENTION" is described the essential physical characteristic of the product, namely "a strength to weight ratio in the neighborhood of 75–125, as compared with a range of 25–33 for known tile." After setting forth the objects of the invention and a somewhat more specific summary of the invention than is found in the abstract, the specification continues with a "DESCRIPTION OF THE PREFERRED EMBODIMENT AND PROCESS," which is a detailed discussion of the process. Three specific examples of "readily available grog and plastic clay" that may be used are disclosed. Permissible ranges for each of the major ingredients—grog, clay, and talc—are set forth, as well as two examples of specific formulations of major in-

ment of the process, machine, manufacture, composition of matter or improvement invented, and must explain the mode of operation or principle whenever applicable. The best mode contemplated by the inventor of carrying out his invention must be set forth.

gredients with specific particle sizes. The only other ingredient is a liquid binder, described as follows:

Used with the above-described constituants [sic] is a liquid binder in an amount of from about 7% to about 11%, by weight. The aforesaid percentage range includes from about 5% to about 10.5% water, and from about 0.5% to about 2.0% of an acid-mix, which itself comprises about 90% (90% strength) phosphoric acid, about 9.5% lignosulfonate such as Georgia-Pacific Orzan C, and about 0.5% of a wetting agent such as Van Waters & Rogers G3300K.

The specification proceeds to describe in considerable detail the individual steps and apparatus used in the process. The steps include sequentially storing the talc, clay, and grog, feeding them to a grinder, and passing them through a series of shaker screens, a ribbon blender, and a muller where the "water and acid-mix" is added from a storage container. The resulting mix is pelletized to a specified range of size and then compacted at 1000 to 4000 psi, *preferably* about 2000 psi, within dies whose faces have been sprayed with oil at about 500 to 700 psi. The pressed body enters the drying, firing, and cooling sections of a kiln.

The criticality of the heating step is then repeated:

For purposes of the present disclosure, an important discovery is the unexpected strength which is achieved by quick-drying and quick-firing a clay body, whereby the outer layer is fired or oxidized to maturity, while the center portion of the body is relatively unfired or unoxidized, such that the outer layer is under tension and the successive inner layers are under compression.

The type of heaters and their positions in the kiln and specific heating times and the temperatures follow for each section of the kiln. After reciting various details concerning the cooling of the tiles, the specification concludes with several pages describing properties of the final products.

█ In view of the foregoing, we find that the specification provides sufficient working procedure for one skilled in the art to practice the invention without undue experimentation. Both specific quantities and ranges are given for the major ingredients, along with particle sizes and both specific temperatures and ranges at various stages of heating. The specification states that the process will work and has worked within the ranges disclosed. On the other hand, the Patent and Trademark Office has presented no persuasive reasons or evidence for doubting the objective enablement of the specification. *In re Armbruster*, 512 F.2d 676, 185 USPQ 152 (CCPA 1975).

The board, citing Tatnall, *Fast Firing: Still More Questions Than Answers!*, Ceramic Age, April 1964, at 28–31, said that it "would appear that the industry as a whole is very secretive" concerning the process parameters and compositions employed. We fail to perceive how this detracts from the sufficiency of appellants' disclosure or renders the statements therein incredible. The board also said that from the specification, as well as the references,[2] "[i]t would appear" that "the composition employed must be carefully formulated." It further stated that the specification "does not give a single embodiment to give guidance to the worker as to how to correlate the necessary amounts [of materials] with process parameters to achieve the desired results." On the contrary, appellants' specification teaches broad ranges for formulation, and there is no showing that the proportions of materials must be correlated with process parameters.

The references require carefully formulated compositions because they fire a clay body completely throughout in a very short time, *i. e.*, flash-firing. Since appellants fire only the exterior layer, this requirement of the references can

---

2. The only other reference in the record before us is a patent to Jackson, No. 2,910,760, issued November 3, 1959, which discloses a composition and process similar to that in Tatnall.

hardly be imputed to appellants' process. Rather, appellants' specification indicates that the critical point of the invention is the heating step, which is specifically disclosed. Although the disclosure is not directed to any specific proportion of materials, there is no evidence that the amount of heating must be varied for different compositions. Indeed, Jackson discloses in Example 2 that a single composition was heated over a wide range of temperatures without changing the properties of the end product. This tends to show that heating and composition are independent variables.

The references show that the art is highly advanced, as would be expected for one so ancient. Thus, Tatnall, published in 1964, reported that two research units had succeeded in producing "without difficulty" acceptable tile bodies on a one hour firing "cycle"; and the Jackson patent, filed in 1954, discloses firing "cycles" of one-half to two hours using a "novel ultra-fast firing ceramic body composition" that results in bodies fired uniformly throughout. Since those skilled in the art are capable of firing clay bodies in the more difficult process of uniformly firing, they would have no difficulty firing only the exterior layer in the same amount of time using appellants' teachings (41 minutes preferred firing cycle—drying, firing, and cooling to 600° F.).

In view of the foregoing, we hold that one skilled in the art would be sufficiently enabled by appellants' specification to perform the claimed process. Accordingly, the decision of the board is *reversed*.

*Reversed.*