50 CCPA

**Application of Newsome W. GAY.**
**Patent Appeal No. 6836.**

United States Court of Customs
and Patent Appeals.
Nov. 14, 1962.

Joseph H. Schley, Schley & Schley, Dallas, Tex., Dos T. Hatfield, Washington, D. C., for appellant.

Clarence W. Moore, Washington, D. C. (Raymond E. Martin, Washington, D. C., of counsel) for the Commissioner of Patents.

Before WORLEY, Chief Judge, RICH, MARTIN, and SMITH, Judges, and Judge JOSEPH R. JACKSON, Retired.

RICH, Judge.

This appeal is from the decision of the Patent Office Board of Appeals affirming the examiner's rejection of combination claims 16 and 17 in application Serial No. 468,753 entitled "Rice Cooking Containers and Processes."

The invention relates to a rice cooking container in the nature of a perforated bag which "permits the uniform cooking of fluffy rice [i. e., that which is "firm and non-sticky"] by inexperienced or unskilled persons." Appellant's brief de-

scribes the container and its operation as follows:

"The container * * * is adapted to enclose a predetermined quantity of uncooked rice. The [container] material has a plurality of minute openings or perforations of a number and size large enough to permit the passage of water and water-soluble starch therethrough and small enough to restrict the release of pressure generated by conversion to steam of water which enters through the perforations upon placing of the container in boiling water when cooking the rice. The pressure generated within the container resists the entry of additional water and emits water containing soluble starch through the perforations to separate the starch from the rice. Also, the perforations permit the draining of water from the container prior to the removal of the cooked rice therefrom."

Referring more specifically to the container material, appellant's specification as filed stated: "The sheet 11 [of the container] may be paper, or vegetable parchment, metal foil, plastic, treated cloth or other thin, frangible, disposable material resistant to water and heat." Appellant amended this sentence to read as follows: "The sheet 11 may be paper, or vegetable parchment, metal foil, plastic, or other thin, frangible, disposable material which is substantially non-porous and resistant to water and heat." The effect of this amendment, as well as the original meaning of the above-quoted sentence, constitutes one of the issues presented by this appeal.

The claims on appeal read:

"16. In combination, uncooked rice, and a disposable container for cooking the rice, the container including an enclosure holding a predetermined quantity of uncooked rice and formed of flexible and manually tearable and substantially non-porous material resistant to heat and water, the enclosure having a plurality of perforations of a size and quantity large enough to permit the passage of water and water-soluble starch therethrough and small enough to prevent the passage of rice therethrough and restrict the release of the pressure generated by the conversion to steam of water which enters through the perforations upon placing of said enclosure in boiling water when cooking the rice whereby the generated pressure resists the entry of additional water and emits water containing soluble starch through said perforations to separate the starch from the rice, said perforations permitting the draining of water from said enclosure prior to removal of the cooked rice therefrom.

"17. The combination as set forth in claim 16 wherein said material is vegetable parchment."

The above claims stand rejected on two grounds, neither of which involves, directly at least, prior art.

The examiner stated the basis for the first, or "new matter," rejection as follows:

"The original disclosure (page 4, lines 8 to 10) states that many materials can be used without any statement as to whether the materials are porous, non-porous or substantially non-porous other than the statement that the materials are 'resistant to water and heat.' This does not serve as proper basis for claiming 'substantially non-porous.' it is pointed out that 'paper' and 'treated cloth' may be porous."

Discussing first appellant's use of the word "paper," we find ourselves unable to agree with the board that appellant intended to include thereby reference to "ordinary 'paper'." Elementary rules of grammar compel us to find that as originally disclosed in his specifications, quoted supra, appellant intended "paper" as well as "vegetable parchment, metal foil, [and] plastic" to be "resistant to water and heat." To come to grips with

the position of the examiner, however, it is necessary for us to decide another point, namely, whether the designation "resistant to water and heat," necessarily connotes substantial non-porosity, as required by the claims.

It may be true that under circumstances *remote* from the instant invention, materials designated "resistant to water" might be other than non-porous. In the instant case, however, the specification makes it clear that appellant is concerned solely with non-porosity, i. e., with his container's ability to keep out or resist the entry of water. Designating materials "resistant to water" *under such circumstances* could only mean that such materials are non-porous. We find it difficult to believe that any person *skilled in the art*, desiring to utilize the instant invention, would think otherwise.

We find the Patent Office position on this "new matter" point untenable for a second reason. The Patent Office has admitted that "vegetable parchment, metal foil, [and] plastic" may be considered non-porous. Alluding once again, therefore, to considerations of basic grammar, a holding that appellant could not properly be said to have intended the word "paper," as used in his specification, to mean non-porous paper, would effectively ascribe two different meanings to the words "resistant to heat and water" in the same sentence. We find such interpretation of language, at the very least, rather strained.

Much of what we have just said applies equally to appellant's reference to "treated cloth." As to this material, however, there is yet another reason for our conclusion. Patent specifications, as the patent act expressly indicates, are directed not to the public in general but to those skilled in the relevant art. Appellant, in an attempt to show how one having such skill would define the words

"treated cloth * * * resistant to water and heat," has cited the following definition of "water resistance (fabric)" from the Encyclopedia of Chemical Technology; [1] it reads as follows:

"In the Technical Manual and Yearbook of the American Association of Textile Chemists and Colorists (1) are the definitions: *water resistance* (fabric)—a general term denoting the ability of a fabric to resist wetting and penetration of water; * * *. In A. S. T. M. standard D583–54(2) * * * the term *water resistance* is used in a less restricted sense to denote the 'ability of a fabric to resist wetting or penetration or both.' "

The solicitor states with regard to this definition that it "does not require that a water resistant fabric be *completely* impervious to water [emphasis in original]." The answer to this objection again lies in appellant's use of the words "resistant to water and heat." We might ask in what sense is plastic resistant to heat? Completely? Obviously not. In what sense is vegetable parchment resistant to water or heat? Completely? Obviously not. It is clear, therefore, that appellant did not intend, originally, that the words "resistant to water and heat" be absolute terms. In view of the above considerations, we find ourselves unable to attribute any particular significance, insofar as the instant "new matter" rejection is concerned, to appellant's cancellation of the words "treated cloth" from his specification.[2]

Since we are of the opinion that as originally filed, appellant's specification *would have indicated to one skilled in the art that* all *suggested container materials were to be substantially* non-porous, we hold that the insertion of this limitation expressly into the specification and claims did not involve "new matter."

1. Interscience Publishing Company, New York, N. Y., Vol. 14, pp. 962–3, 1955.

2. Particularly is this so since, if appellant's uncontroverted statements be be-
lieved, this cancellation was made to avoid prior art references, not before this court, disclosing *untreated* cloth to be inoperative as a cooking container.

The exact basis for the second ground of rejection is not entirely clear.

The examiner stated the essence of his rejection as follows:

"The specification is held to be incomplete, inadequate and not in accordance with Rule 71(b) in that it fails to describe completely a specific embodiment of the package on which appellant predicates patentability; namely it fails to even mention, let alone give specific data as to the size and number of openings."

The board, stating the above rejection substantially as did the examiner, referred to the fact that appellant's brief on appeal before that body stated: "that the number of the perforations may vary from 44 to 1,241 and that the size of the perforations may range from .0013 to .003 square inches for a particular type of rice." The board then said:

"This type of data, we believe, should have been included in the original specification *in order to constitute compliance with Rule 71 (b)* and to give proper guidance to one skilled in the art *so that such persons could produce the article with a minimum amount of experimentation.*" [Emphasis ours.]

On reconsideration the board stated:

"It is not possible to derive any instruction from the specification which would be equivalent to the 'best mode' or the 'specific embodiment' of 35 U.S.C. 112 and Rule 71 (b)."

The solicitor's argument appears to be based on the thought that appellant should have "described in the specification a bag having a specified number and size of perforations," that this would be necessary to produce the appellant's invention with a minimum amount of "experimentation," and that if such information had been supplied, "the specification would have been held to comply with Rule 71(b) *and therefore* with the 'best mode' requirement of Section 112. [Emphasis ours.]"

We have set forth the Patent Office position in some detail as we feel that it confuses, and in fact is in part contrary to, two of the several requirements of the first paragraph of 35 U.S.C. § 112 This paragraph reads as follows:

"[A]  The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it it most nearly connected, to make and use the same, and shall

"[B]  set forth the best mode *contemplated by the inventor* of carrying out his invention." [Emphasis ours.]

■ The essence of portion [A] is that a specification shall disclose an invention in such a manner as will enable one skilled in the art to make and utilize it. *Separate and distinct* from portion [A] is portion [B], the essence of which requires an inventor to disclose the best mode *contemplated by him,* as of the time he executes the application, of carrying out his invention. Manifestly, the sole purpose of this latter requirement is to restrain inventors from applying for patents while at the same time concealing from the public preferred embodiments of their inventions which they have in fact conceived.

■ As we view portion [B], we think that an inventor is in compliance therewith if he does not conceal what he feels is a preferred embodiment of his invention. The question of whether an inventor has or has not disclosed what he feels is his best mode is, however, a question separate and distinct from the question of the *sufficiency* of his disclosure to satisfy the requirements of portion [A] of section 112, supra.

What we find confusing about the instant rejection is not what it says, but what it does not say. It does not object to

the specification because of failure to comply with Rule 71(a) which is an almost verbatim reproduction of portion [A] of section 112.[3] Both the solicitor and the board, if not the examiner, appear to equate Rule 71(b) in its entirety with portion [B] of section 112.[4] In doing so, however, we find that they appear to read into portion [B] requirements very similar to those stated in portion [A], and *in addition* require that the mode disclosed be in fact the *optimum* mode of carrying out the invention. We find no statutory basis for this position.

On this point, we note that the board in its original opinion observed that:

"It * * * appears from the oral hearing and amendment, Paper No. 12, pages 3 to 5, that a packet is *being marketed* which is suitable for one kind of rice in common use. This had 192 holes each .0021 sq. in. in size." [Emphasis ours.]

As this observation applies to appellant's alleged failure to disclose what he felt to be his "best mode" of carrying out the invention, we merely note that the patent law allows patent applications to be filed when in fact the invention has never been reduced to commercial form. Commonly, they are filed long before commercial embodiments reach the market. Such, from the evidence before us, could have been true in the instant case. We find completely inapposite the board's statements concerning the configuration and number of the container's perforations as it is "being marketed."

We find it difficult to follow the interpretation placed on the statements of the examiner by the board and the solicitor. Clearly there is nothing to discuss other than what can be the only statutory basis for the instant rejection—failure to comply with portion [A], supra, of section 112.

If we analyze exactly what appellant's invention is in the instant case, we see that it is in essence a perforated container. Appellant's invention requires that the container be made of special materials having special characteristics. As previously indicated, we find that the specification adequately discloses what several of these materials may be and their essential characteristics. Appellant's specification, referring to the desired size of the perforations in the container, also states that "any diameter large enough to accommodate the passage of water or steam particles and small enough to prevent the entry of foreign matter therethrough is sufficient. Of course, the openings 17 are much smaller than the grains of rice." Referring to the number and positioning of the perforations, the specification states:

" * * * the openings need not cover the entire area of the enclosure and may extend through the fold or unseamed margin 12 of the sheet material. The spacing of the openings may vary with the nature of the sheet material to prevent weakening and accidental tearing thereof. Preferably, the openings are arranged in intersecting rows 18 extending diagonally or in non-parallel relation to the margins of the enclosure to prevent undue weakening thereof."

3. Rule 71(a) reads: "The specification must include a written description of the invention or discovery and of the manner and process of making and using the same, and is required to be in such full, clear, concise, and exact terms as to enable any person skilled in the art or science to which the invention or discovery appertains, or with which it is most nearly connected, to make and use the same."

4. Rule 71(b) reads: "The specification must set forth the precise invention for which a patent is solicited, in such manner as to distinguish it from other inventions and from what is old. *It must describe completely a specific embodiment of the* process, machine, *manufacture,* composition of matter or improvement invented, and must explain the mode of operation or principle whenever applicable. The *best mode contemplated by the inventor* of carrying out his invention must be set forth. [Emphasis ours.]"

■ In view of the above disclosures, it is manifest that appellant does not consider either perforation size, positioning, or number to be particularly crucial aspects of his invention, and that this fact would be appreciated by one skilled in the art who read the instant specification. From the disclosure of appellant's invention as it appears in the specification alone, we feel that one skilled in the art would be enabled to make and use appellant's invention without undue experimentation. Such a skilled person, we find, would clearly know that a multiplicity of perforations in the container would be necessary. While appellant's specification does not disclose the exact number or positioning of such perforations, or their exact size, we think that one skilled in the art "could produce the article with a minimum amount of experimentation," if any experimentation at all be necessary. Whatever doubt may exist on this point must, however, be resolved in appellant's favor in view of the drawings which, in view of the nature of the invention before us, are a very important part of the complete enabling disclosure. We think that they have not been given enough weight in deciding whether the disclosure satisfies this statutory requirement.

For these reasons we find the instant disclosure in full compliance with the requirements of section 112 designated, supra, as portion [A].

■ One final point remains to be discussed—the Patent Office requirement based on Rule 71(b) [5] that a "specific embodiment" of appellant's invention be described *in the specification*. No direct statutory basis exists for this requirement other than portion [A] of section 112, which it appears to implement. The term "specification" must be taken to include the drawings which are a part of it. In our view the specification in this case contains not only one but two "specific embodiments" of appellant's invention. The word "specific" is a somewhat indefinite term in that it involves a matter of degree—the question, How specific?, is not answered. Obviously, it is not necessary that an applicant be more specific than is required by section 112, portion [A]. Not every last detail is to be described, else patent specifications would turn into production specifications, which they were never intended to be. United States specifications have often been criticized as too cluttered with details to give an easy understanding of what the invention really is.

In conclusion, therefore, we hold:

(1) that appellant's noted amendment to the specification does not involve new matters;

(2) that no reason exists for holding that appellant failed to disclose what he felt to be the best mode of carrying out his invention at the time of filing;

(3) that the disclosure in the specification is such that undue experimentation would not be necessary for one skilled in the art and that this disclosure would be sufficient to enable him to make and use the instant invention; and

(4) that in the instant case appellant's disclosure in his specification, taken with his disclosure in the drawing, amounts to a disclosure of a specific embodiment of his invention.

For these reasons, the decision of the board is *reversed*.

Reversed.

WORLEY, Chief Judge (concurring).

This appeal presents far more of a problem to me than appears to be the case with the majority.

It poses very close questions regarding the issue of "new matter," and particularly the sufficiency of applicant's disclosure. There is doubt in my mind that the disclosure properly satisfies the minimum statutory requirement, and it is only by resolving that doubt in appellant's favor, that I concur in the result.

5. See note 4, supra.