53 CCPA

## Application of George BOSY.
### Patent Appeal No. 7646.

United States Court of Customs and Patent Appeals.

May 26, 1966.

William E. Anderson, Robert B. Jones, Chicago, Ill., for appellant.

Joseph Schimmel, Washington, D. C. (Raymond E. Martin, Washington, D. C., of counsel), for the Commissioner of Patents.

Before RICH, Acting Chief Judge, and MARTIN, SMITH, and ALMOND, Judges, and Judge WILLIAM H. KIRKPATRICK.[*]

MARTIN, Judge.

This is an appeal from a decision of the Board of Appeals affirming the rejection of process claims 4, 5 and 6 of appellant's application serial No. 31,439, filed May 24, 1960, for "Treatment of Grape Juice."

---

* United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate in place of Chief Judge WORLEY, pursuant to provisions of Section 294(d), Title 28, United States Code.

The issue in this case is whether the specification satisfies 35 U.S.C. § 112, first, paragraph, wherein it requires first, a full and clear description of the invention, and of the manner and process of making and using it, and second, that the best mode contemplated by the inventor of carrying out the invention be set forth. These two requirements are referred to as the "enabling" and "best mode" portions of 35 U.S.C. § 112, In re Gay, 309 F.2d 769, 50 CCPA 725.

The invention relates to the recovery of grape juice from grapes. The application discloses both an apparatus and method for obtaining the highest yield of grape juice with a low amount of sediment. As a result of a restriction requirement only method claims are present in this appeal.

The process invention involves the conventional cleaning and crushing of grapes followed by the removal of stems. The resultant grape mash, which includes juice and pomace, is then transferred to a preheater. Cellulose pulp, functioning as a filter aid, and pectinase are added, the latter causing depectinization to effect improved recovery of juice. The pulp, mash and pectinase mixture is then transferred to a hold tank in which it is uniformly dispersed. Subsequently, the mixture is pumped into a trommel, which generally comprises a rotatable, substantially horizontal cylindrical screen separator. The trommel is of appellant's own novel construction and design and is the subject of the restricted claims not on appeal. The mixture is introduced into one end of the trommel and flows to the other; as it flows a portion of the contained juice passes downwardly through the screen, where it is collected. The rotation of the trommel provides an additional movement or "agitation" of the bed of pulp and pomace to assist in the filtration of the grape juice. The partially "dejuiced" mixture of grape solids and cellulose pulp is discharged from the end of the trommel over a plate or dam, the height of which determines the height of the mixture or bed in the bottom of the trommel. The pomace which is discharged from the trommel may be further depleted of juice in a screw press as in prior art processes.

Representative claim 5 reads:

A method for recovering juice from grape mash, comprising the steps of adding cellulosic pulp to the grape mash, stirring the pulp into the grape mash without beating of the pulp, establishing a bed of the grape mash having a height of at least 5 inches, and substantially continuously agitating said bed of grape mash while recovering juice from the bottom of said bed.

Claim 4 differs only in reciting the treatment of the pulp as "minimizing beating of the pulp," and claim 6 in more detail recites the movement of the filter bed.

The examiner rejected claims 4–6 as based upon an insufficient disclosure, finding the specification incomplete in not reciting "the conditions necessary to complete satisfactory utilization of the process," and in the failure to disclose the amounts of the ingredients such as paper pulp and pectinase used in the process.

The board noted that appellant's specification indicates that it was known prior to his invention to add cellulose pulp and pectinase to crushed grapes, beat the mixture, and then separate the juice and pulp in a separation device. This was also evident from certain prior art patents, mentioned by the Patent Office and appellant as pertinent to the question of completeness of the disclosure of operating conditions:

| | | |
|---|---|---|
| Leo et al. (Leo) | 2,235,028 | Mar. 18, 1941 |
| Ash | 2,530,322 | Nov. 14, 1950 |
| Little | 2,823,126 | Feb. 11, 1958 |
| Wolcott | 2,837,431 | June 3, 1958 |

Although noting appellant's argument that the amount of pulp and pectinase were not critical, the board held that since there were large variations in the prior art directly related to particular methods of separation of juice and pulp,

the prior art would not guide a skilled artisan, having knowledge of the instant disclosure, "in determining the amounts, or even the kind, of cellulose material which would be suitable in appellant's particular process". In developing this point, the board stated:

> * * * It appears to us, therefore, that the amount of cellulose pulp as well as the type of pulp required to accomplish appellant's purpose are directly related to the essential features of the invention and should not be the objects of experimentation in attempting to practice appellant's process. * * *

The board also agreed with the examiner's view with regard to the lack of disclosure as to the amount of pectinase used, holding that, in this respect, there were no reliable guides in the prior art cited by appellant.[1]

Thus, the Patent Office position with respect to the "enabling" portion of 35 U.S.C. § 112 is that the disclosure is defective in not specifying the type and amount of pulp, and the amount of pectinase used, and that the prior patents cited and relied upon by appellant do not obviate the need for experimentation in attempting to practice appellant's process. Appellant's position is that these were matters known to the art long before appellant's filing date, the patent to Wolcott being relied upon as evidence thereof, and that to enable one of ordinary skill to practice appellant's invention, one need only look to Wolcott.

The Patent Office also urges that appellant's specification does not satisfy the "best mode" portion of 35 U.S.C. § 112.

The Supreme Court set out some guidelines with reference to the suf-

ficiency of a specification to disclose an invention in such a manner as will enable one of ordinary skill in the art to make it in Minerals Separation, Ltd. v. Hyde, 242 U.S. 261 (1929), at 270–271, 37 S.Ct. 82, at 86, 61 L.Ed. 286:

> Equally untenable is the claim that the patent is invalid for the reason that the evidence shows that when different ores are treated preliminary tests must be made to determine the amount of oil and the extent of agitation necessary in order to obtain the best results. Such variation of treatment must be within the scope of the claims, and the certainty which the law requires in patents is not greater than is reasonable, having regard to their subject-matter. The composition of ores varies infinitely, each one presenting its special problem, and it is obviously impossible to specify in a patent the precise treatment which would be most successful and economical in each case. The process is one for dealing with a large class of substances and the range of treatment within the terms of the claims, while leaving something to the skill of persons applying the invention, is clearly sufficiently definite to guide those skilled in the art to its successful application, as the evidence abundantly shows. This satisfies the law. Mowry v. Whitney, 14 Wall. 620 [20 L.Ed. 860]; Ives v. Hamilton, 92 U.S. 426 [23 L.Ed. 494], and Carnegie Steel Co. v. Cambria Iron Co., 185 U.S. 403, 436, 437 [22 S.Ct. 698, 46 L.Ed. 968].

The test that the specification be "clearly sufficiently definite to guide those skilled in the art to its successful application" is applied in this court, In re Gay, supra.

---

1. Appellant filed a request for reconsideration of the board's decision, accompanied by an affidavit, purporting to show that one of ordinary skill in the art considered appellant's disclosure sufficient. The board denied the request, and refused to "rule on the merits of the affidavit since it is untimely and we do not have the benefit of the examiner's views." In the denial, the board noted that the intimation in the principal decision respecting lack of disclosure of the *type* of pulp used in the process "merely amplified the examiner's comments and did not of itself constitute the sole ground of affirmance."

As applied to the facts of this case, we think the test shows the board erred in concluding appellant's disclosure insufficient with respect to the amount and type of pulp and amount of pectinase necessary to successfully carry out the claimed process.

Appellant has admitted, and the prior art shows that use of a filter aid and pectinase is old in this art. The application states that:

* * * the juice and pomace are mixed with paper or cellulose pulp which is *conventionally* added to the mash in grape juice recovery operations. * * * [Emphasis added.]

The Leo patent discloses the use of paper pulp, white tissue paper, bleached sulfite pulp and cotton rags as an aid in filtering fruit juices such as berries, pears, peaches and apricots. Little gives an example in which alpha cellulose is used as a filter aid for grape juice. Wolcott adds wood pulp and pectinase to grape mash as a filter aid. All three specify ranges of amounts of materials used. We find such disclosures to support appellant's conclusion that *amounts* of both were known to those skilled in the art, and it would be expected that variations of the type or amount of grape juice would require some adjustments or preliminary testing in order to determine the amount of a given kind of pulp and the pectinase in order to obtain the best results.

Two factors aid us in putting this case in its proper perspective. The first has in part been discussed above, that the art has used ranges of amounts of such materials before. In this regard we note further that the most pertinent reference, Wolcott states:

Referring to a description of the exemplary method and to the flow sheet, the washed, stemmed and crushed grapes are heated to a temperature of 100° F. to 130° F. for supporting the reaction of the pectin hydrolizing enzyme. To the heated grape material contained in the tank 1, which is equipped with an agitator 2, is added from 0.1% to 0.2% enzyme, by weight. From 0.2% to 0.5% wood pulp, by weight, is also added, and the additives are well mixed with the grape mass so that the enzymes and fines intercepting medium are in mutual immediate proximity, and uniformly distributed throughout the grape material. * * *

The second factor is that the key to the invention is the discovery that overagitation or beating of the pulp, regardless of the amount or type, must be avoided. The specification states:

The hold tank is provided with a mixer 25. This mixer is operated at the end of the holding period to uniformly disperse the paper and pomace throughout the mixture so as to provide a homogeneous mixture, while, at the same time, not providing undue beating of the mixture. This is an important features of the invention to provide most efficient operation of the process and apparatus of the invention. It has been found that excessive beating of the mixture, including the pulp, results in lower recovery of juice and inefficiency in operation.

* * * As previously indicated, this minimizing of beating of the pulp is a desired feature of this invention to provide most satisfactory recovery of grape juice. Substantial beating of the pulp causes hydration of the pulp which results in inefficient operation.

* * * * * *

* * * A particular feature of the means of the invention is the moving bed of grape mash and fibre which is not hydrated to a high degree. If the fibre is overbeaten, hydration occurs causing the cellulosic pulp or paper to become ineffective in the operation of the moving bed. * * * It is important to maintain a hydraulic head, in accordance with this invention, upon the bed in order to assure a most effective dejuicing of the grape mash.

It is that *discovery*, in combination with the other limitations of the process claim, primarily the establishment and agitation of a bed of the mash having a height

of at least 5 inches, that constitutes the invention. With the perspective of the Wolcott teachings as to amounts, and appellant's focus on the beating and the bed height and agitation discoveries, it is evident that appellant's specification will enable one of ordinary skill in this art to practice *the invention* appellant has disclosed and claimed. The description of an invention "need not set forth minutiae of description or procedures perfectly obvious to one of ordinary skill in the art yet unfamiliar to laymen," In re Folkers, 344 F.2d 970, 52 CCPA 1269. "That which is common and well known is as if it were written out in the patent." Loom Co. v. Higgins, 105 U.S. 580, 586, 26 L.Ed. 1177 (1881). We do not agree with the solicitor that the disclosure would require an undue amount of experimentation in order to enable one of ordinary skill to practice *the invention.*

Regarding the best mode requirement of 35 U.S.C. § 112, this court has stated that "an inventor is in compliance therewith if he does not conceal what he feels is a preferred embodiment of his invention," and there is no statutory basis for reading into the best mode portion a requirement "that the mode disclosed be in fact the *optimum* mode of carrying out the invention" In re Gay, supra, 309 F.2d at 772, 50 CCPA at 731–732.

It is our view that the error of failing to "analyze exactly what appellant's invention is in the instant case," In re Gay, supra, 309 F.2d at 773, 50 CCPA at 732, has resulted in the additional error of requiring a best mode be set forth of details not relating to the essence of the invention. What would be sufficient as a best mode here cannot be determined until first the invention is discerned. With a clear picture of the invention in mind it becomes evident that the specification as a whole discloses the best mode in emphasizing that the beating must be minimized to avoid hydration of the pulp and the bed kept at a minimum height for filtration. The former is merely a matter of observation and control of an operating parameter. With regard to the latter, appellant discloses:

> * * * Grape mash is introduced into the trommel 31 at the rate of 15 tons per hour and juice is recovered at the rate of 7.5 tons per hour, pomace and unseparated juice being discharged from the trommel at the rate of 7.5 tons per hour. The juice has a sediment of about 3 percent when discharged from the trommel through the line 32. The bed of grape mash in the trommel was 7 inches in depth.

We do not agree with the solicitor that "there is proper basis for holding that the specification fails to satisfy the 'best mode' requirement of Section 112" follows from the fact that appellant does not "even contend that any portion of the specification represents 'the best mode *contemplated by the inventor* of carrying out the invention'." The Patent Office here does not advance any convincing reason for finding that *the invention* is so dependent on the amounts of pulp and pectinase that a best mode of the claimed process is not disclosed by the general teachings of the specification. It does not follow that there is a proper basis for a best mode rejection under 35 U.S.C. § 112 merely because appellant does not pinpoint *within* the specification some portion that represents a best mode.

For the foregoing reasons, we reverse the decision of the board.

Reversed.