**Application of Roger A. LONG.**

**Patent Appeal No. 7710.**

United States Court of Customs and Patent Appeals.

Nov. 23, 1966.

Kirkpatrick, J., dissented.

Marvin F. Matthews, Houston, Tex. for appellant.

Joseph Schimmel, Washington, D. C., (L. F. Parker, Washington, D. C., of counsel) for the Commissioner of Patents.

Before RICH, Acting Chief Judge, and MARTIN, SMITH, and ALMOND, Judges, and Judge WILLIAM H. KIRKPATRICK.*

SMITH, Judge.

This is an appeal from the decision of the Board of Appeals affirming the examiner's rejection of claims 4 and 5 in appellant's application,[1] for "High Temperature Compositions." The board's affirmance of the examiner's action is based on its conclusion that the appealed claims are "based upon a disclosure which does not comply with the first paragraph of 35 U.S.C. 112 and Rule 71(b)." This conclusion is assigned as error in appellant's notice of appeal.

Appellant's invention relates to metallic compositions which are characterized by high melting points and resistance to oxidation and abrasion at elevated temperatures. In this regard appellant has produced a solid solution of silicon and a metal selected from a group consisting of uranium, molybdenum, chromium, tungsten, zirconium, and titanium by heating a powdered mixture of the two materials until an exothermic reaction occurs to produce a metallic disilicide.[2] The metallic disilicide, more particularly the molybdenum disilicide, may be fabricated into shaped objects by various methods of powder metallurgy, among which is the so-called hot press method. Under the hot press method the metallic disilicide, in powder-ed form and after other preparatory treatments, is:

* * * pressed to the shape desired by the use of graphite form molds. The temperature used for hot pressing may vary between 2600°F and 3100°F. Because of commercial limitations it is more practicable to use temperatures within the range of 2700°F to 3000°F.

The pressure used for hot pressing may be varied generally from 500 to 7000 pounds per square inch depending upon the strength of the graphite dies and the temperature used for pressing. The relative brittleness of the disilicide, however, increases with increase in the applied pressure to the maximum allowable with the graphite dies. It is therefore more desirable to use pressures near the mean of the pressure limits for reasons of cost as well as less brittleness. * * *

Other uses for the metallic disilicide are also disclosed. Thus, the disilicides are stated to be useful in the making of alloys with other metals and as a binder for materials such as beryllia and alumina. With respect to the use of disilicide as a binder material, which is the subject matter of the appealed claims, appellant's application contains the following disclosure:

The use of molybdenum disilicide as a binder metal for very-high temperature applications (3000°F to 5000°F) with such compounds as beryllia, alumina, and the metal carbides is practical.

Tests were run using BeO (Beryllia) and $A_2O_3$ [sic] (Alumina.) Samples containing up to 25 percent of molybdenum disilicide were hot pressed at a temperature above that of the disilicide. The compacts were

---

* United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate in place of Chief Judge WORLEY, pursuant to provisions of Section 294(d), Title 28, United States Code.

1. Serial No. 71,366, filed Nov. 23, 1960, as a division of Serial No. 652,358, filed April 12, 1957, which is, in turn, a continuation of Serial No. 177,548, filed Aug. 3, 1950. Serial No. 652,358 has issued as U.S.Patent No. 2,982,619.

2. This portion of appellant's disclosure appears to be the subject-matter on which U.S.Patent No. 2,982,619 was issued.

then heated in air in an induction furnace to temperatures in excess of 3800°F. Little effect was noted on the samples and the use of this type of "ceramal" for very high temperature use looks promising.

With the above background we turn now to the claims on appeal. Appealed claim 4 reads:

4. As an article of manufacture, a body characterized by relatively high refractoriness, resistance to corrosion and abrasion consisting essentially of particles of material from the class consisting of beryllia and alumina, and including, as a binder, a material from the class consisting of sintered powdered particles selected from the group consisting of particles of disilicides of uranium, molybdenum, chromium, tungsten, zirconium and titanium powdered substantially 100 percent to particle sizes less than 25 microns, said metallic binder being present from an amount sufficient to bind the particles of alumina and beryllia together up to about 25 percent of the weight of the body.

Claim 5 differs from claim 4 in reciting the use of sintered powdered particles of molybdenum disilicide binder for beryllia and alumina. The examiner's final rejection, refusing claims 4 and 5 as based on an insufficient disclosure, stated:

The specification fails to comply with Rule 71(b) which requires a complete description of a specific embodiment of the invention. The Rule also requires that the best mode contemplated by the inventor of carrying out the invention he [sic] set forth. There is in the disclosure no example of a composition containing a metal disilicide, and beryllia or alumina nor is there any example of a method by which such compositions may be prepared. The first two paragraphs on page 24 do not constitute a working example of the alleged invention since the composition of the test samples is not specified nor are the process conditions given. The phrase "hot

pressed at a temperature above that of the disilicide" is without significance since it does not specify the temperature and pressure required to produce the desired article.

The Board of Appeals expressed agreement with the examiner's rejection of the claims but cited the first paragraph of 35 U.S.C. § 112 as well as Rule 71(b) mentioned by the examiner. The essence of the board's reasoning is stated as follows:

The very meager disclosure in the first two paragraphs of page 24 of appellant's specification provides no basis for the present claims and appellant's contention that a skilled metallurgist could without undue experimentation practice the invention is not convincing for even the very characteristics desired in the claimed product are not sufficiently delineated either in the specification or in the claims. * * *

Thus, although the examiner's final rejection is based on the lack of a complete description of a "specific embodiment" and "the best mode contemplated by the inventor of carrying out the invention" under Rule 71(b), the board's decision states a reason for rejecting the claims which calls into operation that portion of the first paragraph of 35 U.S.C. § 112 which is restated in Rule 71(a). In view of the fact that the first paragraph of 35 U.S.C. § 112 is included in the assigned reason of appeal in the notice of appeal and further, in view of the fact that the briefs of both parties extensively discuss the first paragraph of 35 U.S.C. § 112, we will treat the rejection as based on 35 U.S.C. § 112 and Rule 71(b).

As we have clearly indicated in In re Gay, 309 F.2d 769, 50 C.C.P.A. 725, there is no statutory antecedent basis for the "specific embodiment" requirement of Rule 71(b) except insofar as it implements the first paragraph of 35 U.S.C. § 112. Rule 71(a) requires a written description of the invention in such terms as to enable any person skilled in the art to make and use the

invention. We do not equate the terms "specific embodiment" of Rule 71(b) and the "best mode contemplated" of 35 U.S.C. § 112. In re Gay, supra. If by "specific embodiment" is meant a working example, then the same is not required where sufficient working procedure has been set forth showing that one skilled in the art may prepare the claimed article without undue experimentation. In re Honn, 364 F.2d 454, 53 C.C.P.A. 1469. The absence of a working example, denominated as such, does not compel the conclusion that a specification does not satisfy the requirements of 35 U.S.C. § 112 or Rule 71(b). In re Bosy, 360 F.2d 972, 53 C.C.P.A. 1231. We emphasize that the specification as a whole must be considered in determining its sufficiency and that such consideration must necessarily depend on the facts of each case. In re Honn.

After a careful study of the facts in this case, we are of the opinion that the claims are sufficiently supported by the description contained in the specification as a whole. The two paragraphs in the specification, quoted above, relating to the use of molybdenum disilicide as the binder for beryllia and alumina should not be read in vacuo without regard to the surrounding disclosure as to the method of making and using the metallic disilicide. When these two paragraphs are considered in light of the disclosure as a whole, we believe that they would teach a person skilled in the art how to make and use the claimed article without undue experimentation. In re Bosy.

The examiner objected to the disclosure in that it failed to specify the minimum amount of molybdenum disilicide required to bind the oxide together. We note, however, that the disilicide binder is specified to be present in an amount from that sufficient to bind the oxide particles to about 25 percent of the weight of the entire article. We are of the view that the minimum amount of disilicide required to bind the oxide particles together can be determined by a skilled metallurgist without an undue amount of experimentation.

The examiner also objected to the disclosure as to the temperature and pressure to be employed in producing the claimed article. We note that the quoted portions of the specification show the use of a temperature above that employed for hot pressing the pure disilicide. The temperature for hot pressing the disilicide is disclosed to be between 2600°F and 3100°F. In addition, the test temperature of 3800°F for the claimed articles is indicative of a value above the maximum production temperature contemplated. The application reveals that the practical limits of pressures employable for the hot pressing method appear to be from 500 to 7000 pounds per square inch. The disclosure relating to the pure disilicide indicates that the pressure to be employed would depend on the strength of the graphite dyes and the temperature used for pressing. Moreover, it is additionally disclosed that the brittleness of the disilicide increases with increase in the applied pressure and, therefore, it is desirable to use pressures near the mean of the pressure limits.

We are of the view that there is sufficient working procedure in the specification to enable a skilled metallurgist to make and use the claimed article without an undue amount of experimentation.

For the foregoing reasons, the decision of the board is reversed.

REVERSED.

MARTIN, J., participated in the hearing of this case but died before a decision was reached.

KIRKPATRICK, Judge (dissenting).

I would affirm. I am aware that what constitutes undue experimentation on the part of one seeking to take advantage of the knowledge of the prior art and the teachings of the application for patent is a matter of judgment. In this case, though I am very reluctant to disagree with the majority on such a matter, I feel that I must.

The majority opinion refers extensively to the teachings of the application concerning the refractory body made entirely of disilicide and seems to assume that one skilled in the art would consider these teachings applicable to a body composed of beryllia or alumina bound together with disilicide—a proposition not to be found in the specification. This may be a reasonable assumption, but it is nevertheless no more than that. It seems to me that if this is the fact the application should teach it. Actually it teaches away from it, at least in respect of temperature.

There are three variables all of which would have to be coordinated in order to produce the body containing alumina or beryllia.

The first variable is the amount of disilicide binder which may be "up to" about 25 per cent. As the examiner (affirmed by the board) pointed out, experimentation would be required to find the minimum.

As to the second and third variables, the application discloses with respect to the binding of disilicide alone that there is a pressure-temperature relationship. The limits for both pressures and temperatures are given, but the desirable combination of specific temperature and pressure is not disclosed other than to say that the mid-range of pressures is preferred with temperatures from 2700 to 3000° F. This teaching, as has been mentioned, is more or less assumed by the majority to be applicable to a body containing disilicide and alumina or beryllia as well. This may be so, but it would require experiment to determine it and, in view of the wide ranges of pressures and temperatures involved, perhaps many experiments. However, the majority recognizes the fact that the temperatures preferred for the disilicide body alone are not applicable to the body containing beryllia and alumina. The application specifies that the temperature used for molding such bodies should be above that used for the disilicide alone. This leaves in doubt whether the temperature should be above 2600° F., the minimum used with an undisclosed pressure for the disilicide, or above 3100° F., the maximum used for the same body.

Again, the majority narrows the ranges of temperatures by assuming that, since the specification refers to a test where the refractory body was heated to 3800° F. at atmospheric pressure, the hot-press temperature was lower. This may be so, but it is again an assumption.

I do not suggest that any of the assumptions of the majority opinion may not be in accordance with the facts, but it does not appear in the application whether or not they are, nor does the record show that one skilled in the art would make the same assumptions. In that respect, the present case differs markedly from In re Honn, so heavily relied on by the majority. It may be that if there were only one area of uncertainty the range of experimentation required would not be of such magnitude that the specification would fall short of the requirements of the first paragraph of § 112, but with three variables involved I believe that it does.