55 CCPA

**Application of George B. KARNOFSKY.**

**Patent Appeal No. 7885.**

United States Court of Customs
and Patent Appeals.

March 7, 1968.

Christy, Parmelee & Strickland, William H. Parmelee, Pittsburgh, Pa., Robert I. Dennison, Washington, D. C. (Dennison & Dennison, Washington, D. C., of counsel), for appellant.

Joseph Schimmel, Washington, D. C. (Raymond E. Martin, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, SMITH, ALMOND and KIRKPATRICK,* Judges.

ALMOND, Judge.

This is an appeal from a decision of the Patent Office Board of Appeals affirming the rejection of all claims in appellant's application entitled "Method of Manufacturing Vinyl Acetate Monomer." [1]

The invention relates to a process for separating the products of the reaction of acetylene and glacial acetic acid. The primary product sought by this reaction is vinyl acetate. Since the desired reac-

* Senior District Judge, Eastern District of Pennsylvania, sitting by designation.

1. Serial No. 238,525 filed November 19, 1962.

tion does not go to completion, the following principal additional compounds are produced: ethylidene diacetate and acetic anhydride, characterized as the heavy ends (i. e. having higher boiling points), and acetaldehyde and crotonaldehyde, characterized as the lighter ends (lower boiling points). The various products produced by the reaction are separated by fractional distillation, in several stages, the broad technique followed by the prior art. However, in the instant case, instead of allowing ethylidene diacetate to pass through several stages before it is separately recovered, this compound is removed at the first stage of separation as "bottoms" along with acetic acid and acetic anhydride. The remaining products come off as "overhead" to be separated at succeeding stages. This initial separation of crude reaction products takes place in a "crude splitter column." The early separation of the ethylidene diacetate is said to produce a more pure vinyl acetate end product.

For the purposes of this appeal the differences between the various claims on appeal are immaterial. Claim 1 is reproduced as illustrative:

1. In the process of manufacturing vinyl acetate monomer from the reaction of acetylene and acetic acid in a reactor where vinyl acetate, unreacted acetic acid and acetylene comprise the major products from the reaction and crotonaldehyde, acetic anhydride and ethylidene diacetate comprise minor reaction products and wherein unreacted acetic acid is rectified for re-use, the steps of effecting the separation of the acetic acid and vinyl acetate free of crotonaldehyde and other side reaction products comprising initially separating the crude products by distillation in a distillation column into acetic acid, vinyl acetate and crotonaldehyde as overhead product, and acetic acid with minor reaction products less volatile than acetic acid as still bottoms, distilling the overhead from the first distillation in another distillation column to recover vinyl acetate as overhead

and acetic acid with crotonaldehyde as bottoms, distilling said last-named bottoms in a third last column to remove the crotonaldehyde as overhead and rectified acetic acid as bottoms, and recycling said acetic acid so obtained as bottoms to the reactor.

The Board of Appeals held that the claims were properly rejected because the disclosure of the specification is inadequate to meet the requirements of 35 U.S.C. § 112. That is the only issue before us. The board's position was explicitly based upon the lack of disclosure of conditions of operation of the crude splitter column. It was the opinion of the board that one skilled in the art would not understand how to operate the splitter column in such a way as to achieve the results taught by appellant without himself exercising the "inventive faculty," presumably meaning that how to operate the still would be unobvious.

The portion of appellant's specification in issue is:

With the present invention, the crude reaction products are introduced initially into a column which I designate a "crude splitter column." *Enough acetic acid is removed from the top of this column to carry with it all or substantially all of the crotonaldehyde along with the vinyl acetate and acetaldehyde. The bottoms consist of acetic acid in which is dissolved the heavier end products, acetic anhydride and ethylidene diacetate.* Also there will be unreacted acetylene removed from the top of the crude splitter. [Emphasis added.]

It is the contention of appellant that this language directs anyone knowing how to run a still, particularly a fractionating still, how to practice the invention. Based upon the law of partial pressures and the differences in the boiling points of the materials, the appellant argues that one skilled in the art would have no difficulty in choosing his operating conditions so as to strip all of the crotonaldehyde from the bottom product of the still. He says that his directions

in effect say "boil off everything until there is no crotonaldehyde left," and that one skilled in distillations would know how to do this.

The board did not agree that one skilled in the art would have such an easy task in effecting this separation, and stated:

> The specification does not provide sufficient information to allow one skilled in the art to obtain the desired results without considerable experimentation. The separation will be influenced by many factors, some interacting in an additive or cancelling manner. Thus, the flow rate, temperature, pressure and ratio of feed materials may be varied. Appellant's disclosure is considered to be in the nature of a mere invitation to experiment rather than a sufficient disclosure of how the process is carried out. * * *

The board further noted the operation of a prior art process disclosed in patent 2,794,827 to Stanton,[2] and stated:

> We do not understand why, in the Stanton et al. process, in the first fractionation column, identified as column 10, the withdrawn overhead vapors contain acetylene, acetaldehyde and acetone and stripped condensate withdrawn at the bottom contains vinyl acetate, acetic acid and other heavy ends (including ethylidene diacetate), while in the described process, the top materials include vinyl acetate and acetic acid, the bottom materials including the ethylidene diacetate. It appears that the crude splitter column 20 described by appellant is similar to column 10 of Stanton et al., yet the materials taken off the top and bottom are different. We do not think that one skilled in the art would, without the exercise of the inventive faculty, know how to carry out the operation in the splitter column so as to obtain the results described by appellant,

rather than those obtained by Stanton et al.

In its decision on request for rehearing, the board went a bit further:

> It is further pointed out that one skilled in the art and knowing the results obtained by operation of the still of the Stanton et al. patent would be led to believe that the claimed still would operate in the same manner and would not readily know how to vary the conditions to obtain a different result.

In support of the board's decision, the solicitor pointed out that one wishing to practice appellant's invention would have to determine such variables as the richness of the feed to the splitter column and expected variations in that richness, temperatures at top and bottom of the splitter column, and feed rates, and would have to correlate these values with pressure, recycle rate, and design of the column itself before he could determine the method of operating his process to achieve appellant's results.

Assuming all of this to be true, it does not answer the question before us. Our concern is whether one of ordinary skill in the art would know how to adjust these operating variables to achieve the desired result.

Appellant has asserted throughout the prosecution of his application that such adjustments would present no more than a routine operating problem to a chemical engineer. He has noted the fact that the materials involved have widely separated boiling points.[3] He has explained the physical phenomenon of the law of partial pressure in multi-component distillations, and argued that a distillation engineer of ordinary skill, being conversant with these physical facts, would know how to operate a still to achieve the results of the specification. It appears from the record that these facts were dis-

---

2. The Stanton patent was mentioned in appellant's specification as showing one type of prior art process to which appellant's invention can be applied.

3. Ethylidene Diacetate   166° C. B.P.
   Crotonaldehyde        102.3° C. B.P.
   Acetic Acid (glacial)   118.1° C. B.P.
   (Handbook of Chemistry and Physics, 35th Ed.1953)

cussed in an interview between the inventor and the examiner.

The examiner and the board did not dispute the facts presented by appellant, and made no answer to his arguments. We find nothing in the record or in the solicitor's brief to controvert appellant's position except mere conclusory statements as to the level of skill in the art. Based upon this record, which contains no factual basis for the board's conclusions, we cannot find that the board has demonstrated how appellant's specification fails to meet the requirements of 35 U.S.C. § 112.

The issue of whether a given disclosure satisfies the requirements of 35 U.S.C. § 112 has been considered by this court several times during the past few years. See, e. g., In re Bartholome, 386 F.2d 1019, 55 CCPA —— (1967); In re Engler, 371 F.2d 508, 54 CCPA 1007 (1967); In re Long, 368 F.2d 892, 54 CCPA 835 (1966); In re Honn, 364 F.2d 454, 53 CCPA 1469 (1966); In re Bosy, 360 F.2d 972, 53 CCPA 1231; In re Gay, 309 F.2d 769, 50 CCPA 725 (1962). See also Autogiro Co. of America v. United States, 384 F.2d 391 (Ct.Cl.1967).

As this court observed in In re Bosy, supra, the issue of whether a disclosure satisfies the requirements of 35 U.S.C. § 112 requires two separate analyses: i. e., first, whether the disclosure contains a full and clear description of the invention, and of the manner and process of making and using it, and second, whether the best mode contemplated by the inventor for carrying out the invention is set forth. As there noted, these two requirements are referred to as the "enabling" and "best mode" requirements of 35 U.S.C. § 112. In re Gay, supra. Since the brief for the solicitor argues that the specification does not satisfy either requirement, it is appropriate to note that *each* argument is felt to be unpersuasive when considered according to the analysis set forth in our recent decisions on this point. Where one of ordinary skill in the art would know how to select operating conditions so as to achieve a particular result, the failure to include a recitation of some specific operating conditions in the specification cannot give rise to a rejection either under the "enabling" or under the "best mode" requirement of 35 U.S.C. § 112. In re Bosy, supra.

The decision of the Board of Appeals is *reversed*.

*Reversed.*

WORLEY, Chief Judge, did not participate.