59 CCPA

**Henry MARTIN et al., Appellants,**

v.

**Rayner S. JOHNSON, Appellee.**

**Patent Appeal No. 8559.**

United States Court of Customs and Patent Appeals.

Jan. 27, 1972.

Joseph G. Kolodny, Summit, N. J., Harry Goldsmith, Upper Montclair, N. J., attorneys of record, for appellants. John T. Miller, Washington, D. C., of counsel.

Herbert W. Larson, Lynn N. Fisher, Wilmington, Del., attorneys of record, for appellee. Gerald A. Hapka, Arlington, Va., of counsel.

Before WORLEY, Chief Judge, and RICH, ALMOND, BALDWIN and LANE, Judges.

LANE, Judge.

This appeal is from the decision of the Board of Patent Interferences awarding priority of the invention of the sole count in issue. to the party Johnson. We affirm the decision of the board.

The count is drawn to a herbicidal compound which is a substituted urea chemi-

cally named 3-(p-bromophenyl)-1-methoxy-1-methylurea and reads as follows:

1. The compound of the formula

[A4868]

The interference, between the Johnson application [1] and the Martin et al. (Martin) patent,[2] was provoked by Johnson, who copied a claim from the patent. Johnson's application is a continuation-in-part of Serial No. 301,981 ('981), filed August 14, 1963, which in turn was a continuation-in-part of Serial No. 64,254 ('254), filed October 24, 1960. The Martin patent matured from an application [3] which was a continuation-in-part of an application [4] filed May 1, 1962. In the 1962 application, Martin claimed the benefit of a Swiss application filed May 6, 1961, under the provisions of 35 U.S.C. § 119. No testimony was taken by either party during the interference. The board accorded the party Martin the May 6, 1961, date of the Swiss filing and the party Johnson the earlier October 24, 1960, date of his '254 filing.

The Johnson '981 and '254 applications each disclose a herbicidal composition comprising two herbicidally effective compounds, one of which is a methoxy phenyl urea compound. In each application, example 3 uses 3-(4-bromophenyl)-1-methoxy-1-methylurea, the compound of the count, as the herbicidally active substituted urea compound, in conjunction with another herbicidal compound. Neither application discloses how to make the count compound.

Appellants advance two major contentions. They first assert that Johnson is not entitled to the benefit of the filing dates of his parent applications on the ground that the invention disclosed and claimed therein is different from that disclosed and claimed in the interfering application. Appellants further urge

that all three Johnson applications fail to disclose any method of making the count compound thereby failing to satisfy the how-to-make requirement of 35 U.S.C. § 112, first paragraph. The legal consequence of this failure is urged to be two-fold: the benefit of the prior application filing dates would not be available to Johnson, and Johnson has no right to make the count.

The Board of Patent Interferences found as matters of fact the following:

■ c. In 1960, prior to October 24, 1969, it was known in textbook organic chemistry that substituted phenyl isocyanates would add to amines to give substituted phenyl ureas. The compound of the count is a substituted phenyl urea. Further, in 1960 herbicidal substituted phenyl ureas were well known.

d. Prior to October 24, 1960, at least three patents; [sic] namely, U. S. patent 2,655,444 and German patents 1,028,986 and 1,062,059 respectively, all directed to herbicidal halo-substituted phenylureas, disclose processes for making same. * * * 1,062,059 teaches the herbicidal utility of a group of substituted phenyl urea compounds of the following formula:

[A4869]

wherein X could be bromine, n could be 1, $R_3$ could be hydrogen and $R_1$ and $R_2$ could be methyl. When these substitutions are made, the compound of the count would be taught. Although the compound of the count is not specifically disclosed in 1,062,059, it is embraced by the generic formula therein. Three methods of making said substituted phenyl urea herbicides are taught, one of which is the reaction of a substituted phenyl isocyanate with an O,N dialkylhydroxylamine. As

1. Serial No. 358,947, filed April 10, 1964.

2. Patent No. 3,223,721, issued December 14, 1965.

3. Serial No. 433,155, filed February 16, 1965.

4. Serial No. 191,442.

previously set forth, if the appropriate substitutions are made, this scheme covers the preparation of the compound of the count. Thus:

$$\text{Xn} \langle \text{phenyl} \rangle - N = C = O + HN \begin{smallmatrix} R_1 \\ OR_2 \end{smallmatrix} \rightarrow \text{Xn} \langle \text{phenyl} \rangle - \underset{H}{N} - \overset{\overset{O}{\|}}{C} - N \begin{smallmatrix} R_1 \\ OR_2 \end{smallmatrix}$$

[A4870]

The operativeness of this method has not been challenged by Martin.

e. The necessary reactants for forming the compound of the count, i. e., p-bromophenyl isocyanate and O,N dimethylhydroxylamine were both old and known in the art prior to October 24, 1960.

6. On December 18, 1966, Henry J. Gerjovich, a graduate organic chemist, filed an affidavit on behalf of Johnson. In it, he stated that having the German patent 1,062,059 * * * in front of him and given the compound name, 3-(p-bromophenyl)-1-methyl-1-methoxy urea, (the compound of the count) it would be obvious that this compound could be prepared as taught by said patent.

7. Further, in said affidavit, Gerjovich stated that German patent 1,-028,986 teaches the preparation of the compound 3-(p-chlorophenyl)-1-methyl-1-methoxyurea by reacting p-chlorophenyl isocyanate with O,N-dimethyl hydroxylamine in benzene.

Given the compound name, 3-(p-bromophenyl) - 1 - methyl-1-methoxyurea, Gerjovich continued, it would be obvious to him as one skilled in the chemical art that this para bromo-substituted compound could be prepared by the method of the German patent (1,028,986) by using p-bromophenyl isocyanate as a reactant instead of p-chlorophenyl isocyanate.

From these findings, the board concluded that:

5. [W]ith the knowledge of the prior art, * * * one skilled in the art would know how to make the compound of the count merely from knowing its name or structural formula * * *

[and] undue experimentation would not be necessary for one skilled in the art to make the compound of the count.

6. With regard to reaction temperatures and times and solvents, in our opinion, the determination of these parameters, under the circumstances of the case before us, is within the purview of one skilled in the art who could readily determine same to produce the compound of the count with a minimum amount of experimentation.

7. Within the limits indicated in our opinion, supra, the Johnson disclosures, coupled with the prior art clearly satisfy the requirements of 35 U.S.C. § 112.

## OPINION

### I. *"Adequate Chain of Copendency"*

Appellants first urge that the '981 and '254 Johnson applications are directed to an invention different from that described in the Johnson application in interference and the subject matter of the count. It is contended that the earlier applications were drawn to a *mixture* of herbicidal compounds, and that both the effective amount of *total* herbicide and the effective amount of the substituted urea compound were greater than the effective amount of the substituted urea disclosed in the interfering application. Appellants seek to buttress their argument by pointing to the fact that the compound of the count was not claimed in either of Johnson's parent applications. Under the circumstances, appellants conclude that, "with respect to the invention in interference, there is no adequate chain of copendency."

A patent applicant is entitled to the benefit of the filing date of a previ-

ously filed application when the requirements of 35 U.S.C. § 120 are satisfied. In In re Brower, 433 F.2d 813, 58 CCPA 724 (1970), we deemed the appellants there to have been entitled to the filing date of a parent application even though the claims of the application on appeal were drawn to a process which utilized a certain additive *by itself*, whereas the specification of the parent application indicated as *essential* the use of that additive in combination with another. We construed the parent application as indicating that the subject matter regarded as the invention was the process employing the two materials, and that given the parent disclosure, a claim in that application drawn to the use of but one of them would run afoul of the *second* paragraph of § 112.[5] The application on appeal reflected the intent of the inventors to consider as an embodiment of their invention the use of the one additive by itself and therefore supported a claim drawn to its sole use. ·Sec. 120, however, explicitly requires only that the claimed subject matter be "disclosed in the manner provided by the *first* paragraph of section 112," (emphasis added), and we accordingly reversed the decision of the Board of Appeals in that case denying the benefit of § 120 on our finding that the disclosure of the parent was sufficient in the first paragraph sense with respect to the claim on appeal.

■ From *Brower*, based on a factual situation obviously very similar to that at bar, it is evident that the salutary provision in the statute which confers the benefit of an earlier filing date is not dependent on that which may be gleaned from the claims or specification to be the subject matter regarded by the applicants as their invention in the earlier ap-

plication. It turns on whether the *disclosure* requirements of the first paragraph of § 112 are met with respect to the subject matter *now* claimed. As applied to the previously filed Johnson applications, this means that it is of no moment that Johnson may have earlier regarded as essential the use of two herbicides. Appellants' contention that there is no "adequate chain of copendency" is hollow unless it finds substance somewhere in the first paragraph of § 112.[6]

The ·party Martin does separately attack the sufficiency of the applications with respect to the how-to-make requirement, which we consider below. However, it would seem that the first paragraph requirement most closely related to the gist of appellants' initial argument is the mandate that "the specification shall contain a written description of the invention * * *." In these words we have found a distinct *description* requirement,[7] which in this case would mean a written description of the substituted urea which is the subject of the count.

There should be no confusion resulting from the differences in nomenclature used to describe the compound. Appellants' patent, for example, gives the structural formula and refers to the compound as N-4-bromophenyl-N'-methyl-N'-methoxy-urea, and in their brief before this court, they use the name 1 - (4 - bromophenyl) - 3 - methoxy - 3-methyl-urea. The Johnson application in interference names it 3-(p-bromophenyl)-1-methyl-1-methoxyurea without providing any structural formula. It is, of course, the compound which is the subject matter of the count; not its name. That these various names all refer to the

5. See also In re Saunders, 444 F.2d 599, 607, 58 CCPA 1316 (1971).

6. There is, of course, a "copendency" requirement in § 120, but that relates to the copendency of the present and parent *applications*, or the present application and another which itself enjoys the benefits of the section with respect to a yet earlier filed application. Copendency in this sense is obviously not what is urged

by appellants to be lacking in the Johnson chain of applications.

7. Fields v. Conover, 443 F.2d 1386, 58 CCPA 1366 (1971); In re Lukach, 442 F.2d 967, 58 CCPA 1233 (1971); In re DiLeone, 436 F.2d 1033, 58 CCPA 934 (1971); In re DiLeone, 436 F.2d 1404, 58 CCPA 925 (1971); In re Ahlbrecht, 435 F.2d 908, 58 CCPA 848 (1971).

identical compound as that defined structurally in the count is undisputed.

■ As noted earlier, the third example of each prior Johnson application specifically described the use of this herbicide, albeit in combination with another. Appellants state that "the only thing carried forward through the line of cases asserted by Johnson is the mere name of the compound of the count." That is not an entirely accurate assessment of the situation. The name is a chemical name which reveals the chemical structure of the compound, the property of herbicidal activity is expressly disclosed, and the compound's utility in a herbicidal composition is demonstrated. Inasmuch as the compound is precisely what is being claimed in the count, the description of that compound which was present in the '254 and '981 applications satisfies the description requirement of the first paragraph of § 112.

From the standpoint of the description requirement, the omission of the structural formula from the Johnson application is of no consequence. The fact remains that the compound described is the same, and the description need not be in *ipsis verbis* to be sufficient. In re Lukach, 442 F.2d 967, 969, 58 CCPA 1233 (1971).

The fact that the effective amount of the compound may be different in the several applications is irrelevant. The count is not directed to the method of using the herbicide where the effective amount might be a factor; it is drawn instead to the compound itself, and effective quantity is not an element.

## II. *How-to-make requirement*

Appellee has admitted that the Johnson applications are devoid of a disclosure of how to make the compound of the count. Nevertheless, it is urged that each of the applications complies with the how-to-make requirement because the method of synthesis would have been known to one of ordinary skill in the art in October, 1960, the time when the earliest of the applications relied upon was filed. Appellee introduced several German and American patents as well as the affidavit of a chemist as evidence of the knowledge of the art at that time, and the board found that the evidence established that one skilled in the art would have known how to make the substituted urea compound without undue experimentation.

■ Martin contends that the compound could not be prepared without "very substantial and undue experimentation," alleging difficulty in determining reaction times and temperatures, and solvent media. Appellants' conclusion is based on his reading of the evidence submitted by Johnson. The board, however, ascertained the need for only a *minimum* of experimentation. See board's conclusion of law 6, reproduced supra. We have examined the record and find that it supports the conclusions of the board. Martin "had an opportunity to take testimony to support the position that the determination of the proper process conditions 'would unquestionably require considerable [i. e., undue] experimentation,' but he did not elect to do so." Fields v. Conover, 443 F.2d 1386, 1391, 58 CCPA 1366 (1971). We therefore agree that Johnson has shown that the method of synthesis would have required but a mere minimum amount of experimentation well within the purview of the skill of one of ordinary skill in the art.

■ To satisfy § 112, the specification disclosure must be sufficiently complete to enable one of ordinary skill in the art to make the invention without undue experimentation, although the need for a minimum amount of experimentation is not fatal. Fields v. Conover, supra; In re Eltgroth, 419 F.2d 918, 57 CCPA 833 (1970); In re Brown, 329 F.2d 1006, 51 CCPA 1254 (1964). Enablement is the criterion, and every detail need not be set forth in the written specification if the skill in the art is such that the disclosure enables one to make the invention. See In re Karnofsky, 390 F.2d 994, 55 CCPA 940 (1968); In re Folkers, 344 F.2d 970, 52 CCPA 1269 (1965). Although appellants generally appear to agree that a skimpy disclosure can be

augmented by showing the skill of the art to have been adequate to fill whatever voids there may be in the written specification, they attempt to draw a distinction between such a case and one, such as they allege we have here, where there is absolutely no how-to-make disclosure. We fail to see on what basis they perceive a difference, but in any event we note that the recognition of the structure of a chemical compound ordinarily provides those skilled in the art with some information as to its synthesis, and the affidavit of record in this case persuades us that that is true here. Accordingly, we agree with the board's conclusion that the Johnson applications are legally sufficient under § 112.

For the reasons stated above, the decision of the board awarding priority to the party Johnson is affirmed.

Affirmed.