55 CCPA

### Application of Ernst BARTHOLOME, Erwin Lehrer and Friedrich Wilhelm Schierwater.

### Patent Appeal No. 7812.

United States Court of Customs and Patent Appeals.

Dec. 7, 1967.

Marzall, Johnston, Cook & Root, Richard L. Johnston, Herbert B. Keil, Matthew C. Thompson, Chicago, Ill., for appellees.

Joseph Schimmel, Washington, D. C. (S. Wm. Cochran, Leroy B. Randall, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, RICH, SMITH, ALMOND, Judges, and WILLIAM H. KIRKPATRICK.*

RICH, Judge.

This appeal is from a decision of the Patent Office Board of Appeals,[1] adhered

---

* Senior District Judge, Eastern District of Pennsylvania, sitting by designation.

1. Consisting of Examiner-in-Chief Lidoff and Acting Examiners-in-Chief Gaston

and Behrens. The latter wrote both opinions.

to on reconsideration, affirming the examiner's rejection of claims 3 and 4 in application serial No. 95,678, filed March 14, 1961, entitled "Production of Acetylene by Thermal Cracking of Hydrocarbons." No claim has been allowed.

The invention is an improvement in the method of cooling the acetylene product of a thermal cracking process. In such a process, the rapid cooling of the reaction gases is an important step. Rapid cooling is essential to prevent the loss of acetylene and to limit the production of carbon black. It may be advantageously effected by injecting into those gases, which are in a rapidly moving stream, a spray of water, dispersed as finely as possible, to provide a large surface area for the rather substantial heat transfer necessary in a commercial process. However, it is difficult to impart sufficient speed to the fine water particles of a spray to permit them to penetrate a swiftly moving stream of gases. The result is that the middle of the stream of gas is quenched later than its outer portions. In the improvement proposed by appellants this difficulty is obviated by the use of fine sprays to cool the edges of the gas stream and solid jets of water to cool the central part of it. The jets of water, if injected in accordance with the invention, are broken into fine particles *after penetration* of the gas stream by the force of that stream. Thus, without a sacrifice of surface area, the difficulties of the earlier cooling methods are avoided.

The effectiveness of appellant's process depends on the maintenance of a relationship among process variables, which are set forth in the claims, such that the numerical value of the following expression is between 1 and 15:

$$(P_W : P_D) \cdot (d : a)$$

wherein:

$P_W$ = water pressure prior to the outlet openings of the water nozzles

$P_D$ = dynamic pressure of the gas

a = depth of penetration of the water jets

d = diameter of the water jets.

The following are the only claims in the case:

3. An improvement in a process for the production of acetylene by the thermal cracking of hydrocarbons wherein said acetylene is rapidly cooled in a quench zone which comprises: passing a current of said acetylene from a cracking zone into said quench zone, and thereafter cooling said acetylene by injecting a plurality of compact jets of liquid into said current, said jets of liquid being supplied laterally to said current of acetylene under varying pressure heads to insure that substantially an entire cross-section of the current is contacted by said liquid, whereby said jets of liquid are split up into fine droplets by the current and the acetylene is thereby rapidly cooled the dynamic pressure ($P_D$) of the gas stream, the depth of penetration (a) of the water into the gas stream, the diameter (d) of the jets, and the water pressure ($P_W$) prior to the outlet openings being selected so that the numerical values of ($P_W : P_D$) (d : a) lie between 1 and 15.

4. An improved process as in Claim 3 wherein atomized water is also passed into the quench zone so that the current of acetylene is surrounded by droplets of water.

Appellants' application is a continuation-in-part of U. S. application serial No. 748,809, filed July 16, 1958, for which they claimed the benefit of the filing date of a corresponding German application, August 3, 1957, under 35 U.S.C. § 119. Serial No. 748,809 was rejected by the examiner for an inadequate disclosure. The examples set forth in the specification did not show the depth of penetration of the liquid into the product stream, (a), nor did they indicate which value between 1 and 15 was equivalent to the algebraic expression of the claims. An attempt was made to supplement the examples by an amendment but it was rejected as new matter. Appellants then filed this continuation-in-part, adding the missing data to the examples. They con-

tinued to claim the benefit of the German filing date.

Certain prior art was cited by the examiner, and although subsequent to the German filing date, was made the basis of his final rejection "on the ground that when a parent application is fatally defective and abandoned, applicants are not entitled to rely on the date of this application in a second application filed to supply this deficiency." The examiner elaborated:

> 35 U.S.C. 120 clearly requires that the invention must be "disclosed in the manner provided by the first paragraph of section 112 of this title." In like manner 35 U.S.C. 119 permits the benefit of an earlier filing date in a foreign country and has the "same effect as the same application would have if filed in this country."

Accordingly, the only issue in this regard is whether or not the disclosure in applicants' foreign application, which corresponds to that in applicants' parent application, complies with 35 U.S.C. 112. In other words, was the Examiner's rejection in applicants' parent application proper.[2]

And he thought it was proper. He said:

> Applicants are relying on a particular algebraic relationship, which is alleged to be *critical*. This relationship contains five variables, i. e. $P_W$, $P_D$, $d$, $a$ and a value between 1 and 15. Yet, not a *single* example was disclosed showing that a single value for each of these

variables yielded the desired result. Thus, it was not even shown that the conditions in the examples produced the required value of the algebraic expression.

\* \* \* Since it is not known what values were used in the examples, it is not apparent that the result obtained was due to the algebraic relationship. It would appear that such a disclosure is not within the meaning of 35 U.S.C. 112.

The board noted the acknowledgement in the application of two other patents of the appellants, the British and Austrian, each concededly a statutory bar to the application on appeal if the benefit of the German filing date were disallowed. Accordingly the board entered a new rejection under Rule 196(b) based on those patents. On the crucial issue of the adequacy of the earlier applications, the board agreed with the examiner:

> \* \* \* the disclosure of appellants' prior application was not adequate under 35 U.S.C. 112 and Rule 71(b). Although appellants' applications made an algebraic expression an important or critical feature of the asserted invention in application Serial No. 748,-809, appellants' descriptions of specific embodiments gave neither the value for "a", a depth of penetration of the spray, or the particular number between 1 and 15 which was said to be the numerical equivalent of the expression. \* \* \*

2. The pertinent statutes, in relevant part, read as follows:

§ 112. Specification

The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.

\* \* \* \* \* \*

§ 120. Benefit of earlier filing date in the United States

An application for patent for an invention disclosed in the manner provid-

ed by the first paragraph of section 112 of this title in an application previously filed in the United States by the same inventor shall have the same effect, as to such invention, as though filed on the date of the prior application, if filed before the patenting or abandonment of or termination of proceedings on the first application or on an application similarly entitled to the benefit of the filing date of the first application and if it contains or is amended to contain a specific reference to the earlier filed application.

The room that a fifteen-fold variation in the numerical value of the equation allows and the opportunities for experimental variation within this range are just as evident as the fact that the conditions and results will vary substantially as different values are adopted. Under 35 U.S.C. 112 and Rule 71(b), we would expect, a greater certainty and a more explicit description and illustration of the mode of operation of the claimed invention would be required.

The board, in its opinion on a Request for Reconsideration, observed further:

This disclosure for the first time allowed at least a minimal *evaluation of the significance* of the parameters which appellants include· in their claims. [Emphasis ours.]

■■ The only issue, then, is whether the earlier applications comply with section 112, the parent U. S. and German applications having the same disclosure. We do not understand any distinction to be urged in this case between the requirements of Rule 71(b) and the provisions of the statute on which it is based. See In re Gay, 309 F.2d 769, 50 CCPA 725 (1962). It is clear that the examiner and the board both thought the examples ought to be more complete. It is somewhat less clear what criteria of completeness they would apply. There is more than a hint that beyond a recital of the manipulative steps necessary to practice the invention, Rule 71(b) requires, in the examples, some data on which to base an evaluation of its usefulness.[3] We think that this would involve a misapplication of the rule. See Patterson v. Hauck, 341 F.2d 131, 52 CCPA 987 (1965); In re Gay, supra; Kollsman v. Ladd, 226 F.Supp. 186 (D.D.C.1964).

The specification is sufficient in this regard when it enables a person skilled in the art to which it pertains to practice the invention.[4] 35 U.S.C. § 112.

The solicitor interprets the board's opinion as requiring only as much. Appellants, in the solicitor's opinion, omit a recital of steps necessary in the use of the process:

One skilled in the art, working with appellants' parent case examples, could determine an appropriate depth for the jets * * * only by trying all of the values between 1 and 15 for the numeric equivalent number to determine which depths gave an improved result. * * * It is believed clear that an appropriate depth could be determined only by extended experimentation.

■■ Appellants' main argument is that no such experimentation is necessary:[5]

The examples set out in the parent application and in the corresponding foreign application *do disclose* complete and specific embodiments of the process. In Example 1 of these applications, the diameter of the stream of reaction gases is said to equal 400 millimeters. The dynamic pressure ($P_G$ ) equals $2.2 \times 10^3$ atmospheres. The pressure of the water jets is equal to 2 atmospheres gauge. The diameter of the jets is equal to 2.8 millimeters. The depth of penetration (a) of the gas stream, of course, depends *only* upon the dynamic pressure ($P_G$ ) of the gas stream; the water pressure ($P_W$ ) and the diameter of the jet stream (d). A value for each of these variables is given in all of the examples. Following the teaching of the examples, therefore, one will *inherently* produce the desired value for *a*. Thus, a complete

---

3. The criterion employed by the board, in In re Gay, was fairly explicit:

This type of data, we believe, should have been included in the original specification *in order to constitute compliance with Rule 71(b)* and to give proper guidance to one skilled in the art *so that such persons could produce the article with a minimum amount of experimentation.* [Emphasis ours.]

4. 'This of course, does not restrict the examiner's authority to call for *proof* of utility in appropriate cases. See In re Pottier, 376 F.2d 328, 54 CCPA —— (1967).

5. Some, of course, is entirely permissible. Minerals Separation, Ltd. v. Hyde, 242 U.S. 261, 37 S.Ct. 82, 61 L.Ed. 286 (1916).

embodiment of the process is disclosed. No experimentation is required. Even if the person carrying out the process did not observe the depth of penetration *a*, he would still process [produce?] the desired results.

The solicitor replies:

In contending * * * that "The depth of penetration (a) of the gas stream, of course, depends *only* upon the dynamic pressure $P_G$ of the gas stream; the water pressure $P_W$ and the diameter of the jet stream (d)" appellants necessarily would seem to be saying that determining $P_G$ ($P_D$ in the application), $P_W$, and (d) fixes the value of the numeric equivalent number as well as (a). That view is inconsistent with the algebraic expression in the claims which permits the selection of any value between 1 and 15 for the numeric equivalent.[6]

There is little to say except that we do not find it inconsistent with the algebraic expression. We understand the invention to require the selection of the three independent process variables, $P_W$, and, $P_D$, and d so that the value of the algebraic expression,

$$(P_W : P_D) . (d : a)$$

6. The solicitor suggested at oral argument that the depth of penetration may depend on variables other than those of appellants' equation. Specifically, he suggested the temperatures of the water and of the product stream. Counsel for appellants denied it. Such dependency is not apparent to us. There is nothing in the record on the point. We, therefore, resolve this issue against the solicitor.

is a number between one and fifteen. The expression purports only to define a special relationship necessary to effect the purposes of the invention. It could not affect the basic limitations of the dependent variable, a.

Since we cannot find the inconsistency on which the solicitor's case for affirmance is built and since we otherwise agree with his rejection of other bases for the decision below, the decision of the board is reversed.

Reversed.

SMITH, Judge (concurring).

The record shows that the Board of Appeals here consisted of an examiner-in-chief and two acting examiners-in-chief. Appellants do not challenge the legality of the board. For the reasons expressed in my dissenting opinion in In re Wiechert, 370 F.2d 927, 54 CCPA 957 (1967), the decision of such a board in my view is a legal nullity. However, I must accept the majority's view on this issue in the *Wiechert* case, i. e., the legality of the board is not an issue here. I therefore participate in the merits of this appeal and in so doing, fully agree with the opinion of the majority.

The solicitor, on the other hand, may have meant that the *optimum* depth of penetration depends on the temperatures involved and that the examples are worthless without some indication of temperature. This argument apparently would apply whether the depth of penetration (a) were specified or not. It is essentially a new rejection and as such we will not consider it. In re Sutherland, 347 F.2d 1009, 52 CCPA 1683 (1965).